UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RLI INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-01240 |
| | § | |
| STEPHEN GLYNN ROBERTS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

**I. INTRODUCTION**

Before the Court is the plaintiff's, RLI Insurance Company (the "plaintiff") motion for summary judgment (Dkt. No. 36), the defendant's, Stephen Glynn Roberts (the "defendant") response to the plaintiff's motion (Dkt. No. 41), and the plaintiff's reply in support of its motion (Dkt. No. 44), the defendant's motion for summary judgment (Dkt. No. 38), the plaintiff's memorandum opposing the defendant's motion for summary judgment (Dkt. No. 43), the defendant's motion to dismiss (Dkt. No. 37) and the plaintiff's memorandum opposing the defendant's motion to dismiss (Dkt. No. 42). The plaintiff's motion for summary judgment is **GRANTED**. The defendant's motion for summary judgment is DENIED and his motion to dismiss is deemed moot.

**II. FACTUAL BACKGROUND**

The plaintiff is a corporation that provides surety bonds. Its principal place of business is Peoria, Illinois. Around January 12, 2012, the defendant a citizen of Texas along with the Northstar Offshore Group, LLC (Northstar) entered into an indemnity agreement with the plaintiff in exchange for the issuance of bonds. Pursuant to the terms of the indemnity

agreement, the plaintiff is entitled to receive premium payments, demand collateral security, and obtain indemnity against losses and expenses related to any bonds that it issues. In reliance upon its rights under the indemnity agreement, the plaintiff issued nine bonds on behalf Northstar.

On August 12, 2016, a petition for involuntary bankruptcy was filed against Northstar. The bankruptcy case remains pending and Northstar remains subject to the automatic stay. By letters dated February 14, February 20 and March 7, 2017, the plaintiff made demands on the defendant for the unpaid premiums. In the indemnity agreement, the defendant, president of Northstar, is identified as personal indemnitor. After not receiving payment, by letter dated April 3, 2017, the plaintiff demanded that the defendant deliver evidence of the complete discharge of all nine bonds and pay the plaintiff $169,433, for the defendant's outstanding premiums. The defendant failed to pay.

Subsequently, on April 20, 2017, the plaintiff filed suit against the defendant for damages, specific performance, equitable, and other relief. On November 16, 2017, the Louisiana Department of Natural Resources, Office of Conservation made a claim on the Creole Bond (one of the nine bonds) and demanded the plaintiff remit full penal sum in the amount of $1,250,000. On February 27, 2019, the plaintiff filed a motion for summary judgement. On March 19, 2019, the defendant filed a response to the plaintiff's motion. On March 26, 2019, the plaintiff filed a reply in support of its motion.

### III. LAW APPLICABLE TO CASE

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed. 2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for

the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52 (1986)).

## IV. PARTIES CONTENTIONS

### A. Plaintiff's Contentions

Arguing that there is no genuine issue of material fact, the plaintiff requests that the Court grant its motion for summary judgment. The plaintiff maintains that no reasonable jury could return a verdict in favor of the defendant regarding his breach of his obligations under the agreement. The plaintiff maintains that it is has satisfied all the elements for a breach of indemnity agreement claim under Texas law. The plaintiff argues that: 1) the defendant has admitted that he entered into the agreement with the plaintiff; 2) the terms of the agreement obligate the defendant to indemnify the plaintiff for losses and expenses incurred by the plaintiff;

3) the plaintiff has made a claim for indemnity from the defendant and demanded that the defendant fulfill his obligations under the agreement; and 4) the plaintiff has incurred losses and expenses relating to its issuance of the surety bonds and enforcement of the agreement. *Allied World Ins. Co. v. Am. Western Steel, LLC*, No. 17-3608, 2018 WL 6602153, at *5 (S.D. Tex. Dec. 17, 2018).

### B. Defendant's Contentions

The defendant contends that the plaintiff's motion for summary judgment should fail because there are numerous outstanding fact issues regarding this matter. According to the defendant, it is disputed: 1) whether there were misrepresentations or fraud regarding the execution of the indemnity agreement with RLI; 2) whether the agreement is enforceable; 3) whether the defendant is obligated to make any premium payments and, if so in what amounts; and 4) whether the defendant is obligated to provide any collateral security for any outstanding bond obligations. On the other hand, he maintains that his motion for summary judgment should be granted.

### V. DISCUSSION AND ANALYSIS

On February 27, 2019, the plaintiff filed its motion for summary judgment. In the plaintiff's reply in support of its motion, it maintains that the defendant has failed to raise a dispute of a material fact regarding the enforceability of the agreement. The Court agrees.

*A. Affirmative Defenses of Fraud and Estoppel*

Under Federal Rule of Civil Procedure 8(c) a defendant is required to plead all affirmative defenses in its response. As noted by the plaintiff, the defendant failed to raise fraud or estoppel as affirmative defenses in his response. Nevertheless, to prove fraudulent inducement, the defendant must establish: 1) that the plaintiff made a material representation; 2)

that the material representation was false; 3) that the plaintiff intended for the defendant to rely on the representation; 4) that the defendant actually relied on the representation to his detriment; and 5) that the defendant's reliance on the alleged representation was reasonable. *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 423-24 (Tex. 2015).

While the defendant admits that he signed the indemnity agreement, he claims that fraud actually led to his signing. Thus, he asserts estoppel as a defense to his breach. The elements of estoppel include: 1) a promise; 2) foreseeability of reliance thereon by the promisor; and 3) substantial reliance by the promisee to his detriment. *F.D.I.C. v. Royal Park No. 14, Ltd.*, 2 F.3d 637, 641 (5th Cir. 1993). More specifically, the defendant argues that when the agreement was executed, Mr. Die, the plaintiff's attorney, promised him that he had no intention of ever seeking to hold the defendant personally liable. The defendant quoted Mr. Die as saying, "I'm never going to come after you." Consequently, he signed the contract. The defendant contends that he relied on this promise, thus satisfying the requisite elements.

In order for the defendant to prevail on either defense, his reliance on the plaintiff's promise must have been reasonable. The defendant has failed to establish that his reliance on the alleged representation was reasonable. Reliance on a representation that conflicts with the plain language of a contract is unjustifiable and does not constitute evidence of fraudulent inducement to enter a contract. *Westergren*, 453 S.W. at 424. Here the defendant's signature appears on the signature block labeled, "*PERSONAL INDEMNITOR*." (Dkt. No. 1, Ex. A at 5). Yet, he relies on an alleged statement, that contradicts the obligations of the personal indemnitor to be held personally liable. Thus, reliance is unreasonable. There is no genuine issue of material fact as to whether the plaintiff's claims are barred by fraud or estoppel.

*B. Enforceability of the Agreement*

Arguing that the indemnity agreement is illusory and unconscionable, the defendant asserts that the agreement is therefore unenforceable. The defendant argues that the plaintiff's ability to unilaterally cancel the agreement at any time for any reason without liability is illusory. According to the plaintiff, language in paragraph 15 of the agreement allows the defendant to terminate liability as to future bonds upon thirty days' notice. Additionally, the plaintiff claims that the defendant has waived his right to assert such a claim by failing to raise it in his responsive pleading as an affirmative defense in accordance with Federal Rule of Civil Procedure 8(c). *Motion Med. Tech. L.L.C. v. Thermotek, Inc.*, 875 F.3d 765,771 (2017). The plaintiff goes on to explain that the defendant's failure to plead this affirmative defense resulted in actual prejudice and should be considered waived. *Id*. The plaintiff adds that since the discovery period is closed it cannot conduct discovery on this affirmative defense. However, the plaintiff asserts that the general rules of contract construction and public policy favor enforcement of the agreement.

The Court gives the terms of the agreement their plain, ordinary and generally accepted meaning because the instrument does not show that the parties intended otherwise. *Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 851 (2017). The intent of the parties is clear from the plain and ordinary terms of the agreement. Thus, the indemnity agreement is enforceable and there is no basis for construing the contract as illusory. Further, in Texas, public policy favors preserving the freedom of contract. *Lawrence v. CDB Serv., Inc.*, 44 S.W. 3d 544, 553 (Tex. 2001). Moreover, the terms of the agreement permit the defendant to terminate his obligation under the agreement upon thirty days' notice to the plaintiff. (Dkt. No. 1, Ex. A at 3).

There is no genuine issue of material fact regarding the enforceability of the indemnity agreement.

### C. Obligation to Make Premium Payments

Paragraph 1 of the agreement provides, "[i]n consideration of the execution of such bond, the undersigned hereby agree . . . [t]o pay the Surety [plaintiff] an advance premium for the first year." (Dkt. No. 1, Ex. A at 2). The defendant does not dispute this fact. Instead, the defendant argues that payment is not warranted because all the bonds have been replaced or discharged. The defendant argues that bond nos. RLB12691, RLB12692, and RLB12693 contain a provision prohibiting the obligee, in this instance, Pioneer Shelf Properties Incorporated, from filing suit against the plaintiff after the expiration of one year from the date of default by the defendant. The defendant goes on to claim that bond nos. RLB14702 and RLB14717 have been released. He further reports that bond nos. RLB14815 and RLB15157 cover leases and wells that were sold pursuant to the Sale Order from the Bankruptcy Court, and have been replaced by bond nos. 1138556, 1138557 and 1138471. The defendant further maintains that RLB14816 and RLB14817 have been replaced by the Lexon Bond executed on March 22, 2016.

The contract is clear and unambiguous regarding this matter, thus Texas law gives effect to the written agreement. *See Ideal Lease Serv., Inc. v Amoco Prod. Co.*, 662 S.W. 2d 951, 953 (Tex. 1983). The plaintiff asserts that the defendant has not provided any competent evidence showing a judicial or otherwise conclusive determination that such a limitations period would bar a claim on the bonds as required by the agreement. Further the current status of any particular bond as discharged or superseded does not affect the defendant's obligation to make premium payments that became due during the time a bond was in force. The defendant has failed to identify a genuine issue of material fact.

*D. Obligation to Provide Collateral Security*

Paragraph 3 of the agreement provides, "[t]he Surety [plaintiff] may, in its sole and absolute discretion, require the undersigned to provide security, in form and amounts acceptable to the Surety, to secure the undersigneds' obligations . . . ." (Dkt. No. 1, Ex. A at 2). The record includes a letter sent to the plaintiff, dated November 16, 2017, from the Louisiana Department of Natural Resources seeking remittance of the penal sum of $1,250,000 in relation to the bond issued on Northstar's and the defendant's behalf. Moreover, in his own response the defendant admits that the penal sum was requested of the plaintiff. Nevertheless, the defendant contends that there is a material fact issue regarding the defendant's obligation to provide collateral security for the outstanding claim. He maintains that the terms of the bond provide that any suit under the bond must be instituted before the expiration of one year from the date of the occurrence of any event of default.

The contract is clear and unambiguous and the defendant does not argue the contrary. *See id*. In examining the record, the Court reviewed a letter dated May 4, 2016, from Northstar directed to the Louisiana Department of Natural Resources providing notice that the RLI bond was replaced by a bond issued by Lexon Insurance Company as surety. Yet, after more than a year later, the Louisiana Department of Natural Resources contacted the plaintiff seeking remittance of the $1,250,000 penal sum related to the RLI issued bond. Even still, the defendant has failed to proffer any evidence that the Louisiana Department of Natural Resources has withdrawn its request for funds from the plaintiff as required by the agreement. The Court holds that the defendant is liable for collateral security in this case and there is no material issue of fact in dispute. The Court will provide an opportunity for the defendant to offer evidence of waiver of the obligee's claim for the penal sum against the plaintiff.

## V. CONCLUSION

The plaintiff's motion for summary judgment as to the defendant's liability regarding the indemnity agreement is **GRANTED**. A conference to discuss damages, including the collateral security will be set at a later date. The defendant's motion for summary judgment is **DENIED**. In light of granting the plaintiff's motion, the defendant's motion to dismiss is deemed moot.

It is so ORDERED.

SIGNED on this 3rd day of May, 2019.

Kenneth M. Hoyt
United States District Judge